UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,

v.

David Wayne HOLLAND, Defendant–Appellant, Cross–Appellee.

No. 92–8596.

United States Court of Appeals,
Eleventh Circuit.

May 24, 1994.

---

Michael R. Hauptman, Hauptman, Rothstein & Kirby, Atlanta, GA, for appellant.

Robert F. Schroeder, Asst. U.S. Atty., Atlanta, GA, for appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and BRIGHT *, Senior Circuit Judge.

TJOFLAT, Chief Judge:

In this appeal, David Wayne Holland challenges his convictions and sentences on three counts of perjury.[1] By cross-appeal, the Government contends that the sentences imposed by the district court fail to conform to the requirements of the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–3586 (1988), and the guidelines promulgated thereunder. Specifically, the Government challenges the district court's rejection of the probation officer's recommendation that Holland's base offense levels be enhanced by four levels to reflect his leadership role in the offenses, see United States Sentencing Commission, *Guidelines Manual* § 3B1.1 (Nov. 1, 1993), and the court's *sua sponte* refusal to apply the guideline governing perjury cases, U.S.S.G. § 2J1.3, based on the fact that Holland's perjury occurred during the course of civil, as opposed to criminal, proceedings.

After a thorough review of the record, we find no merit in any of Holland's claims of error.[2] The Government's cross-appeal, however, is well taken; accordingly, we affirm Holland's convictions, and remand the case to the district court for resentencing.

---

* Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Holland was convicted of two counts under 18 U.S.C. § 1621(2) (1988) and one count under 18 U.S.C. § 1621(1) (1988). The two subsections are virtually identical, differing only as to the actual source of the perjury. Subsection one applies to knowingly false statements given, in either oral or written form, to a competent tribunal under oath; subsection two, on the other hand, applies to the similar statements made in a written declaration that the author "subscribes as true" under penalty of perjury.

2. Holland raises six claims on appeal. First, he argues that the district court erred in denying his motion to dismiss the indictment for selective prosecution. Holland's second and third claims assert error in the district court's disallowance of various requests for discovery. Fourth, Holland urges that the perjury charges should have been dismissed because his false statements were not material. In his final two claims, Holland argues that there was insufficient evidence on which to convict him and that the district court erred in failing to apply the two-witness rule (which provides that the uncorroborated testimony of one witness is not sufficient to prove the falsity of sworn testimony for perjury purposes). See *United States v. Edmondson*, 410 F.2d 670, 674 (5th Cir.), cert. denied, 396 U.S. 966, 90 S.Ct. 444, 24 L.Ed.2d 430 (1969). As stated above, Holland's claims are meritless; thus, they warrant no discussion.

## I.

This perjury prosecution stems from statements Holland made in an effort to avoid satisfying a money judgment, in the sum of $450,000, entered against him on October 5, 1988, in the United States District Court for the Northern District of Georgia in *Williams v. Southern White Knights, Knights of the Ku Klux Klan, Inc.*, Case No. 1:87–cv–565–CAM (N.D.Ga.1987).[3] That judgment was entered on a finding that Holland and an organization he founded, Southern White Knights, Knights of the Ku Klux Klan, had conspired to deprive certain individuals of their civil rights in violation of 42 U.S.C. § 1985 (1988).

Holland appealed the *Williams* judgment. Thereafter, on January 4, 1989, Holland moved the district court for leave to prosecute his appeal *in forma pauperis.* In the affidavit accompanying his motion, Holland stated that he did not "own any stocks, bonds, notes or automobiles, or anything else that is of any value." The court, relying upon Holland's affidavit, granted his motion.

Approximately seven months after the *Williams* judgment, the attorney for the *Williams* plaintiffs, Morris Dees, retained another attorney, Brian Spears, to obtain satisfaction of that judgment from Holland. In order to determine the state of Holland's finances, Spears took Holland's deposition in July of 1989. Dees had Holland's deposition transcribed and presented it, along with the pauper's affidavit Holland had submitted to the court in support of his motion for leave to proceed on appeal *in forma pauperis*, to the United States Attorney for the Northern District of Georgia; Dees wanted Holland indicted for perjury.

On March 15, 1990, a Northern District of Georgia grand jury indicted Holland on five counts of perjury and one count of obstruct-

ing justice. Counts one and two of the indictment, brought under 18 U.S.C. § 1621(2), alleged that the *in forma pauperis* affidavit Holland submitted to the district court in *Williams* contained false statements regarding his assets. Counts three, four, and five, brought under 18 U.S.C. § 1621(1), charged Holland with making similar false statements in the post-judgment deposition in *Williams.*[4] Count six, brought under 18 U.S.C. § 1503 (1988), charged Holland with obstructing justice by encouraging a witness, Verla Mayo, to present false testimony to the grand jury investigating the case.

Holland's case went to trial, on counts one through five, on March 4, 1992.[5] In its case-in-chief, the Government established that, contrary to the statements Holland had made in his *in forma pauperis* affidavit and his deposition, Holland, at the time he made those statements, owned substantial assets, including a car, a boat, and a fence installation business. It also demonstrated that Holland testified falsely in order to prevent the *Williams* plaintiffs from satisfying their judgment. Holland was able to prevent the *Williams* plaintiffs from levying upon his assets by entering into a series of sham transactions with a number of individuals.

For example, Verla Mayo testified that, the day after the jury in *Williams* returned its verdict, Holland solicited her assistance in secreting his money, so that the *Williams* plaintiffs "would not get any[ ] of his [assets]." According to Mayo, Holland gave her a $3,500 check with instructions to cash it and return the full amount to him. Although the check stated that it constituted prepayment for work Mayo was to do for Holland, Mayo said that the check was merely an attempt to evade satisfying the *Williams* judgment. Thus, after cashing the check, Mayo turned its proceeds over to Holland.

---

3. The complaint in *Williams* alleged that the defendants conspired to deprive the plaintiffs of their civil rights during a January 17, 1987 civil rights march in honor of the birthday of Martin Luther King, Jr., and that, in furtherance of the conspiracy, the defendants aided and abetted various acts of harassment that occurred during the march, including the throwing of rocks and bottles.

4. The false statements cited in the indictment were that Holland had not earned any income in the preceding twelve months (count one); owned nothing of value (count two); had sold his boat (count three); had sold his car (count four); and that a $3,500 check he wrote to Verla Mayo was a prepayment for services (count five).

5. Prior to trial, the court dismissed count six for reasons not relevant here.

Additional witnesses testified that Holland and three others orchestrated an elaborate scheme designed to hide the fact that Holland owned a boat. At Holland's direction, Bobby Starnes delivered Holland's boat to Edwin Pierce. Starnes then instructed Pierce, who had agreed with Holland to conceal the boat, to sign and backdate a $1,000 check to Holland to make it appear as if Pierce had purchased the boat. Because Pierce only had forty dollars in his bank account at the time, Holland provided Pierce with $1,000 in cash to cover the check. The $1,000 was part of the proceeds of the $3,500 check that Holland had Verla Mayo cash.

John Avery Coor helped Holland carry out his scheme by representing that, several months prior to the return of the *Williams* verdict, he had acquired Holland's business and his automobile. Holland, however, continued to own and operate the business himself. As for the car, the Government established that on two occasions after Holland supposedly sold the car to Coor, Holland attempted to transfer title to the car to two other individuals. Coor eventually took the title, but he did so only after the other individuals had refused to accept the car, and after the *Williams* judgment had issued.

The Government dismissed count one of the indictment at the close of its case-in-chief. Holland defended the remaining counts by presenting witnesses who attempted to refute portions of the Government's case. On March 13, 1992, a jury found Holland guilty on counts two, three, and five, and acquitted him on count four.

In the presentence report prepared by the court's probation office, Holland received, with respect to each offense of conviction, an adjusted offense level of 27 and a criminal history category of III. The probation office arrived at Holland's adjusted offense level by adding the following three enhancements to the perjury base offense level of 12: An eight

level increase under U.S.S.G. § 2J1.3(b)(1) for causing or threatening to cause physical injury to a person, Verla Mayo's son, in an effort to suborn Verla Mayo's perjury before the grand jury; a three level increase under U.S.S.G. § 2J1.3(b)(2) for perjury resulting in "substantial interference with the administration of justice;" and, a four level increase under U.S.S.G. § 3B1.1(a) for Holland's role in the offense as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." These findings yielded a guideline sentence range that called for a period of imprisonment of 87 to 108 months.

At the sentencing hearing, however, the court, in determining the applicable sentence range, rejected the adjustments the probation office made to Holland's base offense levels. Specifically, the court rejected each of the probation office's three suggested enhancements.[6] This would have left Holland with an adjusted offense level of 12 for each offense, but the court went further still. Acting *sua sponte*, the court announced that it would give Holland a "downward departure." Concluding that the guideline applied by the probation office, U.S.S.G. § 2J1.3, "Perjury or Subornation of Perjury," does not apply to perjury that occurs in a civil proceeding, the court lowered Holland's base offense level to 8, a level that the court felt was appropriate under the circumstances. Coupled with Holland's criminal history category of III, this offense level yielded a sentence range of 6 to 12 months imprisonment. The court then proceeded to sentence Holland, on each of counts two, three, and five, to six months home detention, along with two years probation and 250 hours of community service.[7]

The Government now appeals these sentences, raising two challenges. The Government contends that: (1) the district court erred in rejecting the probation office's recommendation that each of Holland's base

---

6. Since the Government does not appeal the district court's rejection of the enhancements for the obstruction of justice and for threatening to cause physical injury in order to suborn perjury, we do not comment on the merits of those decisions.

7. In addition, the court required that Holland pay restitution in the amount of $761.50 as well as a special assessment of $150 to the United States of America. The court also barred Holland from possessing a firearm and ordered him fully to disclose his financial status and to submit to an audit by the probation office.

offense levels be given a four level enhancement, under U.S.S.G. § 3B1.1(a), for his role in the offenses, and (2) the district court erred in concluding that guideline section 2J1.3 did not apply to perjury committed in civil cases. We consider each of these challenges in turn.

## II.

### A.

The district court's probation office recommended a four level enhancement of Holland's base offense levels under guideline 3B1.1, which provides for such an adjustment when, "[b]ased on [his] role in the offense[s], ... the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The court rejected this recommendation, finding instead that "in committing perjury ... [Holland] acted alone."

■ Although a district court's findings of fact are generally entitled to deference and are reviewed under the clearly erroneous standard, *United States v. Carrillo*, 888 F.2d 117, 118 (11th Cir.1989), we proceed *de novo* where, as here, the Government contends that the court improperly interpreted the applicable legal standard. *See United States v. Scroggins*, 880 F.2d 1204, 1206 n. 5 (11th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990).

■ Section 3B1.1(a) outlines two situations in which a defendant's leadership role merits a four level enhancement. First, enhancement is appropriate where the defendant plays a leadership role in criminal activity involving five or more participants. A " 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n. 1); *see also United States v. Markovic*, 911 F.2d 613, 616–17 & n. 6 (11th Cir.1990). Moreover, when determining the number of partici-

pants, the defendant is considered to be one of the five. *United States v. Rodriguez*, 981 F.2d 1199, 1200 (11th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 2455, 124 L.Ed.2d 671 (1993).

■ Second, even where the activity involves less than five participants, a section 3B1.1(a) adjustment nonetheless will apply where the defendant plays a leadership role and the operation is "otherwise extensive." *Id.* Under the "otherwise extensive" standard, no set number of criminally responsible participants is required.[8] Rather, "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered," including outsiders who provide unknowing services. U.S.S.G. § 3B1.1, comment. (n. 3).

Guideline 1B1.3 defines the relevant conduct to be considered in determining whether enhancement is appropriate under section 3B1.1. According to section 1B1.3, adjustments shall be determined on the basis of the following conduct:

[A]ll acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

U.S.S.G. App. C, amend. 439 (Nov. 1, 1992) (providing text of guideline 1B1.3 governing Holland's sentence).[9]

■ Thus, in determining whether to adjust the defendant's base offense levels under section 3B1.1, the court's inquiry is not confined solely to the defendant's behavior comprising the actual offense charged. Rather, the court is instructed to consider "all acts or omissions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.' " *Unit-*

---

8. In order to demonstrate that the defendant occupied a leadership role under this standard, however, there must be at least one participant in addition to the defendant. *See Rodgers*, 951 F.2d at 1222.

9. Although the subsequent amendments to guideline 1B1.3 do not have any substantive effect on the outcome of this case, we apply the version in effect on the date upon which the defendant was sentenced, June 3, 1992.

ed States v. Rodgers, 951 F.2d 1220, 1222 (11th Cir.) (citation omitted), *modified in part*, 972 F.2d 1253 (1992). In other words, in deciding whether individuals were participants in the criminal activity, the court must consider, in addition to the criminal act itself, the individuals' involvement in the events surrounding the criminal act.

 In the present case, the district court failed to consider the events surrounding Holland's perjury in determining whether there were five or more participants in that perjury and whether Holland played a leadership role as to those participants. At trial, the evidence indicated that as many as five individuals—Verla Mayo, Bobby Starnes, John Avery Coor, Edwin Pierce, and Randall Smith—assisted Holland by imparting an air of legitimacy to his perjurious statements. In fact, as the Government argued at sentencing, Holland may never have committed perjury absent the willingness of these individuals to engage in sham transactions and the secreting of Holland's assets.

In concluding that Holland acted alone, however, the district court failed to consider the assistance of these individuals in the circumstances surrounding Holland's perjury, and instead focused solely on his perjurious statements. That the district court misapplied the guidelines is made clear by the court's comments at Holland's sentencing hearing:

> How do you deal with the fact that the convictions are for perjury, and on the occasions when Mr. Holland committed the perjury; specifically in the deposition and in the affidavit, he was acting on his own? In other words, he was not prosecuted for transferring his assets. You are correct

that a lot of people were involved in the transfer of assets.

> . . . . .

> I believe that in committing the perjury in the civil deposition and in the affidavit the defendant acted alone. . . .

Because section 1B1.3 clearly contemplates a review of the relevant events that precede and follow the offense of conviction,[10] the district court improperly limited its inquiry by focusing solely on the making of the false statements.

 Moreover, regardless of whether there were five or more participants in Holland's criminal activity, the four level role in the offense enhancement nonetheless may be appropriate based on the "otherwise extensive" nature of Holland's criminal behavior. Although this circuit does not employ a precise definition for the "otherwise extensive" standard, there are a number of factors relevant to the extensiveness determination, including the length and scope of the criminal activity as well as the number of persons involved. *See Rodriguez*, 981 F.2d at 1200. In the present case, the evidence adduced at trial indicated that Holland's perjurious activity continued over a period of three years and involved the assistance of several individuals at least. These facts raise a question, to be addressed by the district court on remand, as to whether Holland's criminal activity was "otherwise extensive."

### B.

The final issue before us on appeal concerns the district court's *sua sponte* refusal to apply the guideline applicable to perjury cases based on the fact that Holland's perjury occurred in a civil case rather than in a criminal case. According to the district court, a "downward departure" was appropri-

---

10. The present case is clearly distinguishable from *Rodgers*, 951 F.2d at 1221–22, where this court determined that a role in the offense enhancement could not be based on conduct that did not comprise the crime of conviction. In *Rodgers*, we refused to permit a role in the offense enhancement where it was based on conduct that comprised other crimes that were dismissed as a result of a plea bargain with the defendant, holding instead that a role in the offense enhancement was improper "where [the

defendant] acted alone in the offense for which he was convicted, even though he acted with others for the other charges against him." *Id.* at 1221–22. In the present case, however, we are not dealing with conduct contained in charges that were dismissed, but rather on the conduct immediately concerning the crimes for which Holland was convicted. Accordingly, the relevant conduct to be considered included all of the events here in question.

ate under these circumstances because the Sentencing Commission, in determining the base offense level for perjury, only considered perjury arising out of criminal proceedings. As such, the court concluded that perjury occurring in civil cases was not adequately considered by the Sentencing Commission in arriving at the base offense level for the crime.

Generally, a district court may not depart from the guideline sentence range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (1988). Whether the Commission adequately considered a factor can be determined only through an examination of the guidelines, policy statements and official commentary. *Id.*

■ Moreover, in reviewing departures from the guideline sentence range, this court employs a three-part analysis. Initially, we examine *de novo*, whether the Sentencing Commission considered the factor relied upon by the district court. Second, if the factor was not considered by the Commission, we must decide whether consideration of the factor is consistent with the guidelines. Finally, if the factor is consistent with the guidelines, and the district court's application of that factor is not clearly erroneous, we must examine whether the extent of the district court's departure is reasonable. *United States v. Mogel,* 956 F.2d 1555, 1557 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992); *see also United States v. Valle,* 929 F.2d 629, 631 (11th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991).

■ In the present case, we need only examine the first prong in order to recognize that the district court based its departure on an improper factor. The district court sought to differentiate Holland's conduct by demonstrating that Holland's perjury in a civil proceeding was an atypical situation falling outside the "heartland." According to the guidelines:

The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Ch. 1, Pt. A, § 4(b), intro. comment. In other words, "departure is reserved for 'unusual' cases where there is something atypical about the defendant or the circumstances surrounding the commission of the crime...." *United States v. Gonzalez–Lopez,* 911 F.2d 542, 549 (11th Cir.1990), *cert. denied,* 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

Neither Holland's conduct nor the circumstances surrounding his offense were atypical or significantly different from the conduct to which the perjury statute normally applies. The mere fact that the vast majority of convictions under 18 U.S.C. § 1621 may involve perjury in a criminal proceeding does not affect our ruling. Holland engaged in the exact type of conduct that would form the basis for a perjury conviction in a criminal proceeding; he wilfully made material statements under oath that he knew were false. Moreover, the fact that the perjury statute itself applies without distinction both to perjury committed in a civil proceeding and to perjury in a criminal prosecution reinforces our view that the circumstances of Holland's perjury do not merit a downward departure.

■ In so holding, we categorically reject any suggestion, implicit or otherwise, that perjury is somehow less serious when made in a civil proceeding. Perjury, regardless of the setting, is a serious offense that results in incalculable harm to the functioning and integrity of the legal system as well as to private individuals. In the instant case, Holland's perjury inexcusably wasted valuable and scarce public resources. His actions needlessly consumed court time, forced the Federal Bureau of Investigation and the United States Attorney's Office to engage in prolonged investigations, and attempted to

prevent private citizens, the *Williams* plaintiffs, from satisfying their judgment.

In sum, Holland has failed to demonstrate that the circumstances surrounding his perjury convictions were atypical.[11] Accordingly, we find that the Sentencing Commission considered and rejected a distinction based on the nature of the proceedings when arriving at the applicable guideline range for perjury, and that the district court erred in refusing to apply the guideline governing perjury cases.

### III.

In summary, we VACATE Holland's sentence and REMAND with instructions that the district court eliminate the downward departure and engage in additional findings of fact as to whether the defendant's guideline sentence range should be enhanced to reflect Holland's leadership role in criminal activity that either involved five or more criminally responsible participants or, in the alternative, was "otherwise extensive" and involved at least one other participant.

IT IS SO ORDERED.

---

11. In fact, the text of the perjury guideline, section 2J1.3, reinforces the view that the Sentencing Commission considered, and rejected, a base offense level distinction based on whether the perjury occurred in a civil or criminal proceeding. In subsection 2J1.3(c)(1), the guideline cross-references the accessory-after-the-fact guideline in cases where the perjury occurs in a criminal case. That the guidelines differentiate between civil and criminal perjury in this limited respect lends credence to the view that the Commission adequately considered the notion of creating separate base offense levels for civil and criminal perjury.