[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 16-14807; 16-16233
Non-Argument Calendar

_____

D.C. Docket No. 9:15-cr-80068-RLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN RAPHAEL BULLY,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 2, 2018)

Before TJOFLAT, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Kevin Bully appeals his convictions and 262-month total sentence[1] for six controlled-substances offenses, in violation of 21 U.S.C. §§ 841(a)(1) and 952(a), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Bully puts forth three arguments. He first contends that the District Court abused its discretion in denying his motion to sever his count for possession of heroin with intent to distribute from the remaining counts in the indictment. Next, he argues that the Court erred in denying his motion to suppress evidence obtained as a result of a traffic stop following a controlled delivery of fake narcotics. Finally, he claims that his total sentence was procedurally unreasonable because the Court erred by relying on inappropriate drug-equivalence ratios, by applying a four-level role enhancement, and by improperly categorizing him as a career offender.[2]

We find none of Bully's arguments persuasive and affirm his convictions and sentence.

I.

Bully claims that the District Court erred in denying his motion to sever his count for possessing heroin with intent to distribute from the other counts in the indictment, which all related to substances other than heroin.

---

[1] The advisory guideline range was 360 months to life in prison.

[2] Bully first appealed his convictions and total sentence (No. 16-14807), and later appealed an order addressing the drug equivalency ratios (No. 16-16233), which the District Court entered after his final judgment. These appeals have been consolidated.

2

We undertake a two-part analysis to determine whether separate charges were properly tried together. *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993). First, we review *de novo* whether joinder was appropriate under Federal Rule of Criminal Procedure 8(a), which is broadly construed in favor of joinder. *Id.* We then determine whether "the district court abused its discretion by denying the motion to sever." *Id.* This Court "will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection." *Id.*

Rule 8(a) states that an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." As long as offenses are of the same or a similar character, they may be joined even if they do not arise at the same time or out of the same transaction or series of acts. *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002). Rule 14(a) further provides that "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires."

Bully argues that because the counts related to similar drug offenses, there was an "unfair carryover of prejudice" from the heroin count to the counts relating

3

to substances other than heroin.  *See United States v. Pierce*, 733 F.2d 1474, 1477 (11th Cir. 1984) (noting that the risk of prejudicial joinder "is greater with respect to charges that are similar in character than with other types of counts properly joined under Rule 8(a)").  He adds that the evidence against him was much stronger as to the heroin count than as to the others, also causing the jury to be improperly influenced toward convicting him on the other counts.

Bully, however, provides no other evidence of prejudice.  To hold prejudicial the mere joinder of counts related to similar offenses would nullify Rule 8(a), which expressly allows joinder of offenses similar in character.  Equally unavailing is his contention that offenses must be severed when, without more, the Government's proof of one offense is stronger than its proof of the others.  Additionally, here the District Court instructed the jury that it was required to consider the evidence relating to each count separately, and that a finding of guilt as to one count must not influence its verdict as to any other count.  *See United States v. Zitron*, 810 F.3d 1253, 1258 (11th Cir. 2016) (noting that such an instruction may cure any prejudice from trying counts together).  We affirm the Court's denial of Bully's motion to sever.

## II.

Bully next argues that law enforcement lacked reasonable suspicion to justify the investigatory traffic stop of his vehicle conducted on March 26, 2015.

The District Court, he contends, therefore erred in denying his motion to suppress the evidence gathered consequent to that stop.

We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact. *United States v. Lewis*, 674 F.3d 1298, 1302 (11th Cir. 2012). Rulings of law are reviewed *de novo* while findings of fact are reviewed for clear error in the light most favorable to the prevailing party below. *Id*. at 1302–03.

An investigatory traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1979). The Constitution permits investigatory stops upon reasonable suspicion of criminal activity, viewed from the standpoint of an objectively reasonable police officer. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008); *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003). Reasonable suspicion is a standard less demanding than probable cause and "requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000).

In mid-February 2015, Homeland Security Investigations agent Victor Garcia got word that a package of alpha-PVP, intended for Osman Renaud at a Pompano Beach address, was intercepted by U.S. Customs and Border Protection. When later driving by the listed address, Garcia saw parked out front a white

5

Jaguar registered to Calvin Bully.  Garcia continued to investigate Renaud and Calvin Bully and found that Kevin Bully had, according to his driver's license, once shared an address with Renaud.  Garcia next ran a background check on Kevin Bully and saw that he had a warrant for his arrest outstanding in Broward County for marijuana possession.

In March 2015, the DEA began investigating alpha-PVP shipments sent from China to South Florida.  London-based DEA agents intercepted a number of these packages and notified South Florida DEA agents, who then decided to do a controlled delivery of one of the intercepted packages.  The subject package was addressed to Jaime Lewis at a Boca Raton address.  While preparing for the delivery, a DEA agent learned that Calvin Bully was listed on utility bills connected to the Boca Raton address.  Garcia also informed the DEA that Calvin had a relative, Kevin Bully, who had an outstanding arrest warrant.  According to DEA intelligence, both Calvin and Kevin were black males of about 5'3" or 5'4".

Several DEA agents and Garcia conducted the controlled delivery on March 26, 2015.  The DEA had replaced the alpha-PVP in the package with a sham drug. Kevin Bully accepted the package and signed as Calvin Bully.  Kevin, who the agents believed to be Calvin, appeared to be the only one at the residence.  About twenty minutes later, Kevin exited the residence, got into a vehicle, and began to drive away.  The agents did not see whether he was carrying the package, or

6

anything else, while walking from the residence to the vehicle. They initiated a traffic stop soon after Kevin began driving away.

Bully argues that, under these circumstances, the agents lacked reasonable suspicion to stop him. We disagree. First, their mistake as to Bully's identity was reasonable and thus of no moment. *See United States v. Gonzalez*, 969 F.2d 999, 1004–05 (11th Cir. 1992). Further, at the suppression hearing an agent involved in the controlled delivery testified that alpha-PVP comes in a crystal form that can be easily broken up; Bully could therefore have been transporting the sham alpha-PVP to the vehicle even if he was not carrying the package. This agent also testified that, in his experience—which included twenty-five years as a DEA agent and participation in over 100 controlled deliveries—drugs are typically moved within sixty to ninety minutes of delivery. Moreover, the agents connected Calvin Bully, whom they reasonably thought they were stopping, to narcotics beyond this controlled delivery—the white Jaguar registered to him was seen at the address for which an alpha-PVP package for Renaud was intended. An agent might thus reasonably suspect that narcotics in addition to the sham alpha-PVP were being moved.

Accordingly, in light of the totality of the circumstances, the Court did not err in denying Bully's motion to suppress.

III.

Finally, Bully challenges the procedural reasonableness of his sentence on three grounds. This Court reviews the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). We first ensure that the district court made no significant procedural error, such as arriving at an improper guideline range, and then we examine whether the sentence was substantively reasonable given the circumstances. *Id.* at 51, 128 S. Ct. at 597. Bully does not challenge the substantive reasonableness of his sentence.

We review a district court's factual findings under the guidelines for clear error and its application of the guidelines to the facts with due deference, which is tantamount to clear-error review. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). A factual finding is clearly erroneous only if we are "left with a definite and firm conviction" that the court committed a mistake. *Id.*

A.

Bully first argues that the District Court erred by finding that alpha-PVP and ethylone, two of the substances involved in his offenses, were for sentencing purposes most closely related to methcathinone and MDEA, respectively. Thus the District Court also erred by applying the drug-equivalence ratios assigned to those comparator substances when calculating his offense level.

8

Alpha-PVP and ethylone are not included in the guidelines' drug-quantity table. *See* U.S.S.G. § 2D1.1(c). To determine the base offense level of an unlisted substance, a court must identify the substance included in the guidelines that is "most closely related" to the unlisted substance. *Id.* § 2D1.1 cmt. n.6. In doing so, the court "shall, to the extent practicable, consider" three factors:

> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.
>
> (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
>
> (C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

*Id.* Then, using the most closely related substance's drug-equivalency ratio as set forth in the guidelines' drug-equivalency tables, the court converts the quantity of the unlisted substance to its marijuana equivalent and uses that figure in calculating the offense level. *Id.* § 2D1.1 cmt. n.8(A), (D). The guidelines provide that one gram of methcathinone is equivalent to 380 grams of marijuana and that one gram of MDEA is equivalent to 500 grams of marijuana. *Id.* § 2D1.1 cmt. n.8(D).

Where there are two permissible views of the evidence, the fact finder's choice between them generally cannot be clearly erroneous. *See United States v.*

*De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc). Whether a witness was credible, moreover, is "typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). We must accept the version of events adopted by the district court "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* (quotation omitted).

After reviewing the record, we hold that the District Court did not err in choosing methcathinone and MDEA as comparator substances and applying their respective drug-equivalence ratios. The Government's witnesses' testimony adequately supported the Court's findings, and Bully has failed to show that those findings were clearly erroneous—the Court's decision to use the ratios assigned to methcathinone and MDEA reflected a choice between two permissible views of the evidence. The Court, moreover, issued an order thoroughly detailing its consideration of the evidence, and the deficiencies therein, presented by both Bully and the Government. We are not left with a definite and firm conviction that its conclusions were mistaken.

B.

Second, Bully argues that the District Court erred in applying U.S.S.G. § 3B1.1(a)'s four-point aggravating-role enhancement because the criminal activity to which he was an "organizer or leader" did not "involve[] five or more participants" and was not "otherwise extensive."

A district court may enhance a defendant's offense by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). A "participant" is someone "who is criminally responsible for the offense, but need not have been convicted." *Id.* § 3B1.1 cmt. n.1; *United States v. Rendon*, 354 F.3d 1320, 1332 (11th Cir. 2003). A court determines the number of participants by tallying the number of individuals involved in the relevant conduct for which the defendant was responsible, including the events surrounding the criminal act. *United States v. Holland*, 22 F.3d 1040, 1045–46 (11th Cir. 1994). The defendant himself is counted in this calculation. *Id.* at 1045.

Here, the District Court properly found that Bully's criminal activity involved at least five participants.[3] Bully concedes that Calvin Bully, Jaime

---

[3] The District Court ruled in the alternative that Bully's criminal activity was "otherwise extensive." Bully does not challenge that holding beyond stating in conclusory fashion that the District Court erred in so determining. We need not rule on the validity of the Court's conclusion or any waiver issues because the Court properly determined that Bully's criminal activity involved at least five participants.

Lewis, and he himself were participants.  The Court also heard and credited testimony that several other individuals agreed to receive drug shipments at their addresses in return for payment from Bully.  For example, text messages and a seized package connect April Garcia, the mother of two of Bully's children, to such conduct.  Text messages and two seized packages link Isaac Garcia, April's brother, to the same.  The District Court therefore did not err in applying the U.S.S.G. § 3B1.1(a) enhancement.

## C.

Lastly, Bully argues that the District Court erred in applying U.S.S.G. § 4B1.1's career-offender enhancement.  He contends, contrary to established Eleventh Circuit law, that the Court should not have used his convictions under Fla. Stat. § 893.13(1)(a) as predicate offenses because § 893.13(1)(a) does not have a *mens rea* element.  In *United States v. Smith*, we held that § 893.13(1) is a predicate "controlled substance offense" as defined in U.S.S.G. § 4B1.2(b) despite its having no *mens rea* requirement.  775 F.3d 1262, 1266–68 (11th Cir. 2014).  The District Court did not err in following *Smith* and applying the enhancement.  *See Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent

12

panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court.").

## IV.

For the reasons discussed, we affirm Bully's convictions and the 262-month sentence imposed.

**AFFIRMED.**