[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10123
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20408-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO MANUEL MANGANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 27, 2018)

Before WILLIAM PRYOR, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Pedro Manuel Mangano appeals his 48-month sentence, imposed after pleading guilty to one count of health care fraud, in violation of 18 U.S.C. § 1347. We affirm.

## I. BACKGROUND

Mangano owned and operated PVRX Pharmacy, Corp. ("PVRX"), where he served as the president, sole director, and sole signatory on its bank account. Mangano enrolled PVRX in the Medicare Part D health care benefit program and engaged in a scheme to defraud the Medicare Part D program through submitting false and fraudulent claims to the program. As part of the scheme, Mangano paid kickbacks to individuals for referring fraudulent prescriptions to PVRX and then submitted the claims to the Part D program to receive reimbursements without ever actually ordering many of the drugs or dispensing the drugs to the Medicare beneficiaries. Mangano paid a patient recruiter several thousand dollars cash to provide him with patients' Medicare information, which he used to submit the fraudulent claims. The Medicare beneficiaries, who were complicit in the scheme, received several hundred dollars cash each month as kickbacks.

The scheme went on for at least three years and resulted in losses to the Part D program of over $1,000,000. Numerous individuals were involved in the scheme, including beneficiaries, patient recruiters, and unknown others, such as

doctors.  Mangano submitted fraudulent prescriptions from at least five separate Medicare beneficiaries.

Mangano was indicted on ten counts of health care fraud, in violation of 18 U.S.C. § 1347.  The indictment listed ten fraudulent prescriptions that Mangano submitted for five separate Medicare beneficiaries.  Mangano pled guilty to Count I, pursuant to a plea agreement, and the remaining counts were dismissed.

In preparing the presentence investigation report ("PSI"), the probation officer applied a base offense level of six under U.S.S.G. § 2B1.1(a)(2).  Mangano received a 14-level increase under section 2B1.1(b)(1)(H), as the loss was more than $550,000 but not more than $1,500,000; a two-level increase under section 2B1.1(b)(7), as the offense involved a government health care program and the loss was more than $1,000,000; a two-level increase under section 2B1.1(b)(10)(C), because the offense involved sophisticated means; and a three-level increase under section 3B1.1(b), as Mangano was a manager or supervisor of extensive criminal activity.  Mangano received a three-level decrease for accepting responsibility for the offense under section 3E1.1(a) and (b), resulting in a total offense level of 24.  Based on a total offense level of 24 and a criminal history category of I, Mangano's guideline range was 51 to 63 months of imprisonment.  The statutory maximum was ten years of imprisonment under 18 U.S.C. § 1347.

Mangano filed objections to the PSI, arguing that the three-level manager/supervisor enhancement under section 3B1.1(b) was inapplicable, because he was not a supervisor or manager of criminal activity that was otherwise extensive, and that the two-level sophisticated-means enhancement under section 2B1.1(b)(10)(C) was inapplicable.

The district court stated that it believed 48 months was the "right sentence" in this case and that it was "not sure" whether its ruling on the enhancement mattered since it intended to impose a 48-month sentence.  The court overruled Mangano's objections, stating that Medicare fraud is sophisticated by its very nature, because the participants have to do numerous things just right, and, therefore, the enhancement will apply except in "very unusual circumstances." The court imposed a below-guideline 48-month sentence.

On appeal, Mangano argues that the district court clearly erred by applying a three-level manager/supervisor enhancement to his base offense level because there was no evidence that he managed or supervised any other criminal participant.  Additionally, he argues that the district court clearly erred by applying a two-level sophisticated-means enhancement because his offense was not sophisticated.

4

## II. DISCUSSION

### A. Manager/Supervisor Enhancement

Section 3B1.1 calls for an enhancement in a defendant's base offense level if he was an organizer, leader, manager, or supervisor of the offense.  U.S.S.G. § 3B1.1.  The government must prove the existence of an aggravating role by a preponderance of the evidence.  *United States v. Alred*, 144 F.3d 1405, 1421 (11th Cir. 1998).  We review for clear error a district court's decision to impose an aggravating-role increase.  *United States v. Sosa*, 777 F.3d 1279, 1300 (11th Cir. 2015).  Review for clear error is deferential; "we will not disturb a district court's findings 'unless we are left with a definite and firm conviction that a mistake has been committed.'"  *Id*. (quoting *United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009)).  A district court's choice between two permissible views of the evidence cannot be clear error.  *United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006).

Under section 3B1.1(b), a district court may increase a defendant's offense level by three levels if the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive.  U.S.S.G. § 3B1.1(b).  Section 3B1.1 requires that the defendant exercised some authority in the organization or exerted some degree of control, influence, or leadership.  *United States v. Gupta*, 463 F.3d 1182, 1198

5

(11th Cir. 2006).  To qualify for an increase under this section, the defendant need only manage or supervise one other participant in the criminal activity.  *Sosa*, 777 F.3d at 1301.  "However, 'a section 3B1.1 enhancement cannot be based solely on a finding that the defendant managed the assets of a conspiracy,' without the defendant also managing or exercising control over another participant."  *Id.* (quoting *United States v. Glover*, 179 F.3d 1300, 1303 (11th Cir. 1999)).

A defendant can be a manager or supervisor where he arranges criminal transactions or hires others to participate in the criminal conduct, even if he does not have the power to force others to engage in criminal acts.  *See United States v. Matthews*, 168 F.3d 1234, 1249-50 (11th Cir. 1999) (stating that the management enhancement is appropriate for a defendant who arranges drug transactions, negotiates sales with others, and hires others to work for the conspiracy); *see also United States v. LaFraugh*, 893 F.2d 314, 319 (11th Cir. 1990) (concluding that the defendant was a manager or supervisor where he recruited a codefendant, participated in negotiations, and used his residence as the base of operations).  In *Sosa*, we affirmed a section 3B1.1(b) enhancement where the defendant co-ran a clinic used in the fraud, received 50% of the fraud proceeds, had signatory authority over the bank account, wrote checks to compensate at least one participant in the scheme, and had some decision-making authority and control over the pharmacy's finances.  *Sosa*, 777 F.3d at 1301-02.

6

A "participant" in criminal activity "is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 cmt. n.1; *Sosa*, 777 F.3d at 1301. "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S.S.G. § 3B1.1 cmt. n.1; *Sosa*, 777 F.3d at 1301. Although we do not employ a precise definition for the "otherwise extensive" standard, there are a number of factors relevant to the extensiveness determination, including the length and scope of the criminal activity as well as the number of persons involved. *United States v. Holland*, 22 F.3d 1040, 1046 (11th Cir. 1994).

The district court may base its factual findings on undisputed facts in the PSI. *United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009). Facts in the PSI are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity. *Id.* at 844. In ultimately deciding the defendant's role in the offense, the sentencing court need not make any specific subsidiary factual findings. *United States v. De Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc) (explaining that, as long as the record supports the district court's decision and the court clearly resolves disputed factual issues, the court may simply state its conclusion). The district court is not required to make

7

any specific findings other than the ultimate determination of the defendant's role in the offense. *Id.* at 940.

Here, the district court did not clearly err in applying the three-point manager/supervisor enhancement under section 3B1.1(b), as Mangano maintained exclusive control over the pharmacy where the fraud took place and all of the profits from the scheme, which he used to direct and facilitate the actions of the other criminal participants. *Gupta*, 463 F.3d at 1198. Moreover, the scheme here either involved five or more participants, or was otherwise extensive, as the PSI indicated that there were at least five other criminal participants, and the scheme went on for at least three years, resulted in losses exceeding one million dollars, and involved the services, either knowing or unknowing, of numerous individuals, including insurance auditors, Medicare employees, and patients. U.S.S.G. § 3B1.1(b); *Sosa*, 777 F.3d at 1301; *Holland*, 22 F.3d at 1046. Lastly, the district court did not clearly err by applying the enhancement without making an explicit factual finding that Mangano controlled another participant, as it was not required to make such an explicit factual finding when determining Mangano's role in the offense. *De Varon*, 175 F.3d at 939-40.

## B. Sophisticated-Means Enhancement

We review for clear error a district court's decision to impose a sophisticated-means enhancement. *Sosa*, 777 F.3d at 1300. Under section

2B1.1(b)(10)(C), a defendant's offense level is enhanced by two levels if the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. U.S.S.G. § 2B1.1(b)(10)(C). "'Sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* cmt. n.9(B). Examples of sophisticated means listed in the commentary include hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts. *Id.* However, the application notes do not limit the ways in which a defendant could use sophisticated means to conceal his crime. *Clarke*, 562 F.3d at 1165.

Section 2B1.1(b)(10)(C) was amended in 2015 to narrow the focus of the enhancement to the sophistication of the defendant's personal conduct, not the scheme as a whole. *United States v. Presendieu*, 880 F.3d 1228, 1248 (11th Cir. 2018). In gauging sophistication, the court must examine the totality of the defendant's conduct, as there is no requirement that each of the defendant's individual actions be sophisticated. *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010). The use of repetitive, coordinated conduct to perpetuate and conceal a fraud scheme supports a sophisticated-means enhancement. *United States v. Bane*, 720 F.3d 818, 826-27 (11th Cir. 2013). Further, the length of time

9

for which the conduct is not detected can reflect on the sophistication of the scheme.  *United States v. Feaster*, 798 F.3d 1374, 1381 (11th Cir. 2015).

Here, the district court did not clearly err in applying the sophisticated-means enhancement because Mangano's conduct of enrolling the pharmacy in Medicare Plan D, creating and submitting claims for fraudulent prescriptions, and misleading and deceiving insurance auditors was all intricate offense conduct, made possible by his expertise as a pharmacy owner and licensed pharmacy technician.  U.S.S.G. § 2B1.1 cmt. n.9(B).  The sophistication of Mangano's conduct was further evidenced by the scheme's endurance for three years without detection and by his utilization of repetitive and coordinated conduct, including continual cash payments to the criminal participants.  *Bane*, 720 F.3d at 826-27; *Feaster*, 798 F.3d at 1381.

**AFFIRMED.**