[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10705
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cr-00070-RV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER LEE GALLEGOS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 4, 2015)

Before WILLIAM PRYOR, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Christopher Gallegos appeals his total 126-month sentence of imprisonment, imposed after he pled guilty to possessing a stolen firearm and to possessing a firearm as a convicted felon.  On appeal, Gallegos asserts that the district court erred by imposing a four-level enhancement for trafficking of firearms, under United States Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(b)(5), because he had no reason to believe that the person to whom he transferred the firearms would use or dispose of them unlawfully.  Gallegos also contends that the court's application of a two-level enhancement for possessing a stolen firearm, under U.S.S.G. § 2K2.1(b)(4)(A), amounts to impermissible double counting because another enhancement—possession of a firearm in connection with another felony offense, under U.S.S.G. § 2K2.1(b)(6)(B)—accounts for the same harm.  After careful review, we affirm Gallegos's total sentence.

## I.

Gallegos was indicted by a federal grand jury on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1), and one count of possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j)(1) and 924(a)(2) (Count 2).  Gallegos pled guilty to both charges pursuant to a written plea agreement.

The presentence investigation report ("PSR") and the factual basis in the plea agreement described the offense conduct as follows.  On August 15, 2012,

Gallegos and others forcibly entered the home of another with the intent to commit a theft. They removed a gun safe from the wall of the burglary victim's bedroom, destroying the wall in the process. The victim reported twelve missing guns, among other stolen items. That same day, Gallegos gave the guns to Wesley Bryant and asked if he could "do something with these[.]"

The day after the burglary, Bryant contacted a friend (the "buyer") to inquire about selling him a gun. The buyer had known Bryant for several years and previously had purchased antique guns from him. Bryant went to the buyer's home two days later, bringing with him over ten guns stacked together in a sheet. Bryant told the buyer that he had received the guns as payment for a debt. According to the buyer's wife, who had known Bryant for several years, Bryant "was not himself" that day, and he appeared "all jacked up, nervous, couldn't sit still, and [was] wired up." She noticed he had a dry mouth and was breathing heavily. When she expressed concern about the guns and asked that they be removed from the house, Bryant responded, "[T]hese guns are not stolen."

The buyer agreed to purchase the guns for $1,800, though he knew they were worth in excess of $10,000. The buyer stated that he would pay Bryant the following Monday, two days later. Bryant agreed and left the home. After Bryant

3

left, the buyer noticed an evidence sticker on some of the guns[1] and then called the police. Bryant later told officers that he had received the guns from Gallegos.

Using the 2014 Sentencing Guidelines, the PSR calculated a base offense level of 20 after grouping Counts 1 and 2 under U.S.S.G. § 3D1.2(a). *See* U.S.S.G. § 2K2.1(a)(4). The PSR also applied the following enhancements for specific offense characteristics: (a) a four-level increase for the number of firearms involved, U.S.S.G. § 2K2.1(b)(1)(B); (b) a two-level increase because the offense involved stolen firearms, *id.* § 2K2.1(b)(4)(A); (c) a four-level increase for trafficking of firearms because Gallegos transferred the firearms to an individual whose possession of the firearms was unlawful, *id.* § 2K2.1(b)(5); and (d) a four-level increase because he possessed the firearms in connection with another felony offense—the burglary, *id.* § 2K2.1(b)(6)(B). Finally, Gallegos received a three-level decrease for acceptance of responsibility, U.S.S.G. § 3E1.1, for a total offense level of 31. With a criminal history category of VI, Gallegos's guideline sentencing range for Counts 1 and 2 was 188 to 235 months' imprisonment. The maximum statutory term on each count was ten years' imprisonment.

Gallegos raised two objections to the PSR. First, he contended that application of the stolen-firearm enhancement impermissibly double counted the

---

[1] At the sentencing hearing, the government explained that the guns bore evidence stickers because the victim of the burglary at one point turned the guns in to the sheriff's office to comply with a domestic-violence protective order. The sheriff's office apparently placed evidence stickers on the guns. When the order was removed, the authorities returned the guns to the victim, who did not remove the stickers.

same conduct—the fact that the firearms were stolen—as the enhancement for possession of a firearm in connection with the burglary. Second, he objected that the trafficking enhancement did not apply because there was no evidence that he knew that Bryant was a convicted felon who could not lawfully possess firearms or that Bryant would dispose of the firearms unlawfully. Favorable rulings on these two objections would have reduced Gallegos's total offense level to 25, for a guideline range of 110 to 137 months' imprisonment. For its part, the government moved for a sentence reduction on the basis of substantial assistance under U.S.S.G. § 5K1.1.

After hearing oral argument from the parties, the district court overruled both objections and accepted the PSR in its entirety. The court sentenced Gallegos to 106 months' imprisonment on Count 1 and 20 months' imprisonment on Count 2, with the sentences to run consecutively to each other and to any state sentences imposed in two specified cases. The court explained that the sentence below the guideline range was based on the government's substantial-assistance motion. The court also stated that the sentence was reasonable and took into account the advisory guidelines and Gallegos's personal history, including "a long history of drug abuse." Finally, the court stated that it would have imposed the same sentence regardless of its rulings on Gallegos's objections. Gallegos now brings this appeal.

5

## II.

We review the district court's legal interpretation and application of the Sentencing Guidelines *de novo,* and we review its factual determinations for clear error.  *United States v. Zaldivar*, 615 F.3d 1346, 1350 (11th Cir. 2010).  The government bears the burden of proving by a preponderance of the evidence the facts necessary to support a sentencing enhancement.  *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).  We review allegations of impermissible double counting *de novo*.  *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005).

## A.

Gallegos first argues that his conduct did not constitute "trafficking" under U.S.S.G. § 2K2.1(b)(5) because there was no evidence that he knew or had reason to believe that Bryant was a convicted felon or that Bryant intended to use or dispose of the guns unlawfully.

The general guideline covering firearms offenses is § 2K2.1.  In calculating the offense level, a four-level enhancement applies if the defendant "engaged in the trafficking of firearms."  U.S.S.G. § 2K2.1(b)(5).  To show that the trafficking enhancement applies, the government must prove that "the defendant 1) transported or transferred, or received with the intent to transport, two or more firearms to someone else; 2) knowing that the defendant's conduct would result in another's unlawful possession, use or disposal of those firearms."  *United States v.*

*Asante*, 782 F.3d 639, 643 (11th Cir.), *cert. denied*, 2015 WL 4159986 (U.S. Oct. 5, 2015) (No. 15-5138); U.S.S.G. § 2K2.1 cmt. n.13(A).[2]  Gallegos does not challenge the first requirement—that he transferred two or more guns to Bryant. But he does contend that the government failed to prove the second requirement.

There are two ways that the government can prove that a defendant "knew or had reason to believe" that his conduct would result in another's unlawful possession, use, or disposal of the firearm.  *Asante*, 782 F.3d at 643.  First, the government can show that the defendant "knew or had reason to believe that [his] conduct would result in the transport, transfer, or disposal of a firearm to **an individual . . . whose possession or receipt of the firearm would be unlawful.**" U.S.S.G. § 2K2.1 cmt. n.13(A)(ii)(I) (emphasis added).  "[A]n individual whose possession or receipt of the firearm would be unlawful" refers to an individual who has certain prior convictions or who was, at the time of the offense, under some

---

[2] More precisely, Application Note 13(A) to § 2K2.1 states that the trafficking enhancement

applies, regardless of whether anything of value was exchanged, if the defendant—

(i)    transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

(ii)   knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

(I)    whose possession or receipt of the firearm would be unlawful; or

(II)   who intended to use or dispose of the firearm unlawfully.

7

form of criminal-justice sentence. *Id.* cmt. n.13(B). As the government concedes, there is no evidence that Gallegos knew that Bryant was such an individual.

Second, the government can show that Gallegos "knew or had reason to believe that [his] conduct would result in the transport, transfer, or disposal of a firearm to **an individual . . . who intended to use or dispose of the firearm unlawfully.**" *Id.* cmt. n.13(A)(ii)(II) (emphasis added). In applying the trafficking enhancement under this subsection, we look to the "circumstances known to the defendant" when he transferred the firearms, "not to what actually happened with the firearms." *Asante*, 782 F.3d at 644. At sentencing, the district court concluded that this alternative applied because any disposal of the stolen guns by Bryant would be unlawful.

Gallegos argues that there is no evidence of the circumstances surrounding the transfer that would indicate Gallegos knew or had reason to believe that Bryant intended to dispose of the guns unlawfully. The government responds that it met its burden by showing that Bryant knew the guns were stolen, because Bryant's knowing possession or disposal of stolen guns would have been unlawful. *See* 18 U.S.C. § 922(j) (making it unlawful to knowingly receive, possess, or dispose of any stolen firearm). In support of that contention, the government cites evidence of Bryant's actions when negotiating the sale of the guns, including his anxiety, false statements about the source of the guns, largely unprompted statement to the

8

buyer's wife that the guns were not stolen, and the low sales price. The government also points to the fact that, in a separate proceeding, Bryant pled guilty to possessing stolen firearms, thereby admitting he knew the guns were stolen.

We need not resolve whether the government met its burden of proving that the trafficking enhancement applied with reliable and specific evidence. *See, e.g.*, *United States v. Newman*, 614 F.3d 1232, 1238-39 (11th Cir. 2010) (explaining that "factual findings used to support a sentencing enhancement must be based on reliable and specific evidence and cannot be based on speculation"). Even if the district court erred in applying the enhancement, any error would be harmless because the court stated that it would have imposed the same sentence regardless of its ruling on the issue, and Gallegos's total sentence is reasonable. Before turning to the issue of harmlessness, though, we first address Gallegos's double-counting argument.

**B.**

Gallegos next argues that application of both the enhancement for possessing a stolen firearm, U.S.S.G. § 2K2.1(b)(4)(A), and the enhancement for possessing a firearm "in connection with another felony offense," *id.* § 2K2.1(b)(6)(B), impermissibly double counted the fact that Gallegos possessed a stolen gun. Gallegos does not dispute that either enhancement, viewed in isolation, applies on the facts of his case.

9

"Impermissible double counting occurs only when one part of the [Sentencing] Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *Asante*, 782 F.3d at 647 (internal quotation marks omitted). In general, double counting is permissible if the Sentencing Commission intended the result and each guideline section addresses conceptually separate sentencing notions. *United States v. Flanders*, 752 F.3d 1317, 1340 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1188 (2015). We presume that the Commission intended for separate guidelines sections to apply cumulatively unless otherwise specified. *Id.*; *United States v. Dudley*, 463 F.3d 1221, 1227 (11th Cir. 2006).

The application of both enhancements in these circumstances does not constitute impermissible double counting. First, because the guidelines do not specify otherwise, we presume that the Commission intended for § 2K2.1(b)(4)(A) and § 2K2.1(b)(6)(B) to apply cumulatively. *See Flanders*, 752 F.3d at 1340; *cf.* U.S.S.G. § 2K2.1 cmt. n.8(A) (listing circumstances not applicable here in which § 2K2.1(b)(4)(A) does not apply "because the base offense level takes into account that the firearm . . . was stolen").

Second, after reviewing the relevant guideline provisions and application notes, we conclude that the two enhancements address conceptually distinct notions relating to sentencing. *See Flanders*, 752 F.3d at 1340. The enhancement

10

for possessing any firearm "in connection with another felony offense" addresses the firearm's potential of facilitating that felony offense. U.S.S.G. § 2K2.1(b)(6)(B); *id.* § 2K2.1 cmt. n.14(A); *see id.* cmt. n. 14(C) (defining "another felony offense"). This also is so when a defendant, "during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary." U.S.S.G. § 2K2.1 cmt. n.14(B). In such a case, as here, the enhancement "is warranted because the presence of the firearm has the potential of facilitating another felony offense." *Id.* In other words, § 2K2.1(b)(6)(B) makes no distinction between a defendant who brings a gun with him to facilitate a burglary, even if the gun was not stolen, and a defendant who finds and takes a gun during the course of a burglary. It is the gun's potential of facilitating another felony offense that matters for § 2K2.1(b)(6)(B).

By contrast, the harm accounted for by § 2K2.1(b)(4)(A) is not its potential use, but the simple fact that the firearm possessed or transferred was stolen. The defendant need not even know that the firearm was stolen for the enhancement to apply. *United States v. Richardson*, 8 F.3d 769, 770 (11th Cir. 1993).

In sum, the enhancement for theft of a firearm in connection with a burglary addresses conceptually distinct notions relating to sentencing from the enhancement for possession of a stolen firearm. *See Flanders*, 752 F.3d at 1340;

11

*cf. United States v. Webb*, 665 F.3d 1380, 1383 (11th Cir. 2012) ("We have long approved of the sentencing scheme that subjects a defendant who possessed a firearm during another offense to a lengthier sentence than a defendant who merely possessed a gun."). Consequently, the district court did not err in applying both enhancements.

### III.

A district court's erroneous calculation of the applicable guideline range warrants reversal unless the court's error is harmless. *United States v. Perkins*, 787 F.3d 1329, 1341 (11th Cir.), *petition for cert. docketed*, (U.S. Oct. 29, 2015) (No. 15-6742). "A calculation error is harmless when a district judge clearly states that she would impose the same sentence regardless of the enhancement, and the sentence imposed is reasonable." *Id.* In these circumstances, we have recognized that it would be pointless to remand for resentencing if resolution of the guidelines issue does not matter to the judge's ultimate sentencing decision. *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006).

Here, the district judge clearly stated that he would have imposed the same sentence regardless of his rulings on Gallegos's objections on the guideline issues.[3] That is sufficient to trigger harmlessness review. *See id.*

---

[3] Although Gallegos objected to the court's stating so at sentencing, he does not raise the point on appeal, and he therefore has abandoned any challenge to the court's statement that its sentence would have remained the same regardless of the outcome of the guideline issues. *See*

12

As to the reasonableness of the sentence, we must determine whether "the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *Id.* Because we have concluded that the stolen-firearm and "in connection with another felony" enhancements were properly applied, we will exclude only the four-level trafficking enhancement from Gallegos's guideline-range calculations. Without the trafficking enhancement, Gallegos's total offense level would have been 27, for a guideline sentencing range of 130 to 162 months.

We review the substantive reasonableness of a sentence for an abuse of discretion. *Perkins*, 787 F.3d at 1342. "A sentence is substantively unreasonable if it does not achieve the purposes of sentencing stated in § 3553(a)[,]" *United States v. Moran*, 778 F.3d 942, 982 (11th Cir.), *cert. denied*, 2015 WL 4875327 (U.S. Oct. 5, 2015) (No. 15-5631) (internal quotation marks omitted), which include the need to reflect the seriousness of the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct, *see* 18 U.S.C. § 3553(a)(2).[4]

We will overturn a sentence as substantively unreasonable only if "we are left with the definite and firm conviction that the district court committed a clear

---

*United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

[4] The district court must also take into account the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, any pertinent policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (3)-(7).

13

error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted). The party challenging the sentence bears the burden of proving that his sentence is unreasonable. *Moran*, 778 F.3d at 982.

Here, Gallegos has not shown that his sentence is substantively unreasonable. The conduct underlying the offenses—burglarizing someone's home and stealing a dozen guns—was serious. *See* 18 U.S.C. § 3553(a)(1) & (2)(A). Gallegos also has an extensive criminal history, which produced twenty criminal-history points, seven points more than the thirteen necessary to trigger the highest criminal-history category, demonstrating the need for the sentence to afford adequate deterrence to criminal conduct and to protect the public from further crimes of Gallegos. *See id.* § 3553(a)(1) & (2)(C)–(D). Even taking into account Gallegos's substantial assistance, we cannot say that his total 126-month sentence, below the recalculated guideline range of 130 to 162 months' imprisonment, was substantively unreasonable.

## IV.

In conclusion, we reject Gallegos's argument that the district court impermissibly double counted his offense conduct by imposing enhancements both for possessing a stolen firearm, U.S.S.G. § 2K2.1(b)(4)(A), and for possessing a

14

firearm in connection with a burglary, *id.* § 2K2.1(b)(6)(B).    And we do not resolve Gallegos's challenge to the trafficking enhancement, *id.* § 2K2.1(b)(5), because we conclude that any error in applying the enhancement would have been harmless under the circumstances.    Therefore, we **AFFIRM** Gallegos's total 126-month sentence of imprisonment.