[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15471
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cr-80009-KAM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON HENRY DAVIS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 10, 2017)

Before TJOFLAT, HULL and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Jason Davis appeals his 96-month total sentence for eight counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1-8); one count of access device fraud, in violation of 18 U.S.C. § 1029(a)(2) (Count 9); eleven counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts 10-21); and two counts of making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Counts 22-23), all arising from his unlawful receipt of his deceased father's pension and Social Security benefits. On appeal, Davis argues that his sentence is procedurally and substantively unreasonable. After review, we affirm.

## I. FACTUAL BACKGROUND

### A.    Offense Conduct

Beginning in 2005, defendant Jason Davis lived with his divorced parents, Sheila Ann Davis and Henry T. Davis, Jr., in a trailer in Florida. Henry Davis, the father, was retired, and, by 2006, Henry Davis was receiving both pension and Social Security benefits. In March 2008, the endorsement signature for Henry Davis on his cashed benefits checks changed. In October 2008, a bank account was opened online in Henry Davis's name with no in-person verification. Beginning in March 2009 and February 2011, respectively, Henry Davis's Social Security and pension benefits were wire transferred and direct deposited into this

2

bank account.  While Ann Davis, the mother, died of cancer in 2011, Henry Davis seemingly continued to collect pension and Social Security benefits until fall 2014.

In April 2013, renters of the Davises' trailer were planting tomatoes in the backyard and discovered skeletal remains, ultimately determined to be those of Henry Davis, the defendant's father.  Officials confirmed that Henry Davis's death had occurred many years earlier, that the cause of death was strangulation, and that the manner of death was homicide.  During their ensuing investigation, law enforcement interviewed defendant Jason Davis four times.  The first three times, Jason Davis denied any knowledge of his father's whereabouts or whose remains were found in the trailer's backyard.

During the fourth interview, defendant Jason Davis admitted he was present when his mother violently murdered his father and then buried him in the backyard.  Defendant Davis said that he watched his mother strike his father with a crow bar and then strangle him with a VCR cord.  Defendant Davis also admitted that after the murder he painted over the blood spatter inside the trailer.

Defendant Davis did not inform the Social Security Administration, his father's former employer, the Housing Authority of Gloucester County in New Jersey, or the New Jersey Public Employees' Retirement System of his father's death.  As part of his plea, Defendant Davis admitted that after his father's murder, he used his father's identity to collect and use his father's Social Security and

3

pension benefits, first by cashing benefits checks made out to his father and later by using a debit card linked to the bank account in his father's name.  In total, defendant Davis received more than $118,000 in his father's Social Security and pension benefits, and an additional $11,081 as a result of false statements he made in his application for food assistance benefits.

## B.    Presentence Investigation Report

Defendant Jason Davis's presentence investigation report ("PSI") separately grouped the 12 aggravated identity theft counts (Counts 10-21) and stated that the guidelines sentence for these counts was two years consecutive to any other prison term, as required by statute.  See 18 U.S.C. § 1028A(a)(1), (b)(2); U.S.S.G. § 2B1.6(a).

The PSI grouped the remaining counts (Counts 1-9, 22, 23) together pursuant to U.S.S.G. § 2D1.2(d), and: (1) assigned a base offense level of 7, pursuant to U.S.S.G. § 2B1.1(a); (2) applied an 8-level upward adjustment because the loss involved was more than $95,000 but less than $150,000, pursuant to § 2B1.1(b)(1)(E); and (3) applied a 2-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a).  With a total offense level of 13 and a criminal history of III, the PSI calculated an advisory guidelines range of 18 to 24 months' imprisonment for these counts.  The PSI noted that the statutory

4

maximum prison terms for Counts 1 through 8 was twenty years, for Count 9 was ten years, and for Counts 22 and 23 was five years.

The government objected to the PSI's failure to recommend an upward departure under, inter alia, U.S.S.G. § 5K2.0(a)(2), because Defendant Jason Davis's knowledge of his father's murder constituted circumstances of a kind not adequately taken into consideration in determining the guidelines range. The government sought an upward departure or alternatively an upward variance based on the 18 U.S.C. § 3553(a) sentencing factors. Defendant Davis did not file written objections to the PSI's guidelines calculations.

## C.    Sentencing Hearing

At the sentencing hearing, the district court confirmed that defendant Jason Davis did not have any objections to the PSI. In support of its request for an upward departure or variance, the government presented testimony from John Cogburn, the homicide detective who investigated Henry Davis's death and interviewed defendant Davis. According to Detective Cogburn, he first interviewed defendant Davis on the day the remains were discovered, and Davis denied any knowledge of them. Defendant Davis claimed he did not know his father's whereabouts and that his mother had kicked his father out of the trailer. Detective Cogburn reviewed photographs of the trailer and the site where Henry Davis's body was buried and stated that Henry Davis was found in a four-square-

foot hole, wrapped in a green blanket, and with an electrical cord around his neck, though law enforcement never disclosed these details to defendant Jason Davis. The cause of death was strangulation and blunt force trauma, and investigators determined that the death occurred sometime in early 2008.  Detective Cogburn explained that blood evidence discovered on the ceiling of the trailer matched Henry Davis's DNA and that defendant Jason Davis later admitted to painting over blood splatter on the wall.

During Detective Cogburn's second and third interviews, defendant Jason Davis continued to deny any knowledge of his father's death.  During the fourth interview—a year and a half after the body was discovered—Detective Cogburn confronted defendant Davis with evidence that had been collected regarding his father's homicide and benefits, and Davis's story changed.  This time, defendant Davis said that his mother hit his father once in the head with a crowbar and that he heard a "thud," but Detective Cogburn testified that blood spatter evidence indicated multiple blows.  Defendant Davis described and demonstrated for Detective Cogburn how his mother strangled his father using an electrical cord.

Defendant Davis told Detective Cogburn that his mother, on her own, wrapped his father in a green blanket and moved his body through the trailer into the backyard to be buried.  According to Detective Cogburn, the body was moved at least fifty feet and placed into a four-foot-deep hole.  Detective Cogburn

6

testified, based on his experience, that "it would be unlikely" for a lone individual to have carried out all of these actions. He also noted that, at the time of the murder, defendant Davis's mother could not lift or work and had ovarian cancer. Detective Cogburn acknowledged that Davis's mother weighed 200 pounds, and that defendant Davis described her as a strong person, while defendant Davis weighed about 130 pounds at the time of the interview. Detective Cogburn also acknowledged that Davis had been on dialysis at the time of the murder.

A recording and a transcript of the fourth interview was admitted as evidence. Detective Cogburn read aloud a portion of the fourth interview transcript in which defendant Jason Davis stated that his mother had discussed the murder with him 24-to-48 hours before it occurred. Davis's mother expressed frustration with Henry Davis's habits and then asked Davis, "[W]ell, what if we just took him out, something like that." According to the interview transcript, defendant Davis admitted that during this conversation, his mother told him she wished she could get rid of his father but keep his pension. Defendant Davis explained to Detective Cogburn that both he and his mother were on disability, and needed his father's benefits to pay for the trailer's lot fee and other bills and everyday living expenses. Detective Cogburn indicated that defendant Davis knew the exact amounts of money that would be available to him and his mother if his father was gone.

Defendant Davis did not present any evidence at the sentencing hearing, but opposed the request for an upward departure or variance. Davis argued that the government's request was based on speculation that he conspired with his mother to commit the murder and that simply watching a murder occur did not make Davis an accessory.

The district court questioned whether it could "just compartmentalize [Davis's charged offenses] and ignore the surrounding circumstances that . . . allowed him the opportunity to do this by not telling the police." The district court also expressed skepticism that defendant Davis "just sat there and watched his mother do it," especially because Davis had lied to law enforcement previously. Referencing U.S.S.G. § 1B1.4, which allows the sentencing court to consider "any information concerning the background, character and conduct of the defendant," the district court asked:

> So why can't I consider the fact that he sat there and watched his mother murder his father - - again, taking the evidence in the light most favorable to [defendant Davis], that he sat and watched his father be murdered and did nothing about it, and then stole his father's pension money? Why shouldn't I take those facts into account under 1B1.4 in deciding about his background, character and conduct in imposing a sentence in this case?

Davis's counsel responded that these facts were "already inherent in the plea and the guidelines that have been agreed to."

8

In rebuttal, the government emphasized, inter alia, that defendant Davis's aggravated identity theft helped to conceal the murder and that Davis knew the murder was going to take place and admitted to painting over the blood. The government also read aloud another portion of the fourth interview transcript, in which defendant Davis described how his mother approached him with the crowbar just before the murder:

> The defendant says: "And she wanted to give it to me and see if I would do it. I said, I can't, I can't do this, I can't do anything like that. So she left me there in the bedroom, went out. I don't know, maybe a couple of minutes had passed, and then I heard a thud, and that's when I walked out there to see what was happening, and I see mom standing over him with a crowbar."

When the district court asked why Davis's painting over the blood did not make him an accessory after the fact, defense counsel responded that this conduct was "minimal" and that there was no evidence he did it specifically to cover up the murder.

After a brief recess, the district court made the following fact findings: (1) defendant Davis "was aware that his mother was going to murder his father, and he knew that the murder was for the purpose, at least in part, to allow him and his mother to collect the pension and Social Security benefits of his father once he was deceased"; (2) Davis "by his own admission . . . was an accessory after the fact to the murder by helping his mother cover up the crime, by helping to clean the blood off," and that this was done "not just for housekeeping purposes, but to help

9

conceal the murder"; (3) Davis "assisted his mother in carrying out the purpose of the murder by taking his father's pension and Social Security benefits"; and (4) Davis helped conceal the murder by stealing his father's identity.

The district court determined that these circumstances were not taken into account by the Sentencing Guidelines, as follows:

> So what we have here is something that I don't think is directly addressed by the guidelines under any specific provision, because we have a crime that the defendant was an accessory to. So the defendant is an accessory after the fact to the crime, which is committed for the purpose of committing the federal crime for which he is here.

The district court concluded that a departure was appropriate under U.S.S.G. § 5K2.0(a)(2)(A) and (B) because the circumstances of Davis's case had not been taken into consideration in determining the guidelines range, but were relevant information concerning his character and conduct that could be considered under § 1B1.4. Although the district court concluded that "an upward departure is warranted" under § 5K2.0, it also noted that "even if there aren't grounds for a departure . . . a variance under [18 U.S.C. §] 3553 would be appropriate for all the reasons that I'm discussing."

The district court examined the guidelines provision applicable to accessory after the fact to murder and manslaughter to gauge the extent of the departure or variance. The district court concluded that a 48-month departure or variance from the high end of Davis's guidelines range of 48 months was appropriate, resulting in

10

a sentence of 96 months.  After stating that it had considered the parties'

statements, the PSI, and the § 3553(a) factors, the district court imposed concurrent

72-month sentences as to Counts 1 through 9, 22, and 23, and 24-month sentences

as to Counts 10 through 21, to run concurrent with each other, but consecutive to

Counts 1 through 9, 22, and 23.

## II.  DISCUSSION

### A.    Procedural Reasonableness

Davis contends his 96-month sentence is procedurally unreasonable because

the district court's 48-month upward departure or variance was based on erroneous

fact findings and was not supported by a compelling justification.

In reviewing the procedural reasonableness of a sentence, we consider

whether the sentencing court committed any significant procedural error, such as,

inter alia, improperly calculating the guidelines range or selecting a sentence based

on clearly erroneous facts.  United States v. Cubero, 754 F.3d 888, 892 (11th Cir.

2014).  A sentencing court's findings of fact may be based upon evidence

presented at trial, facts admitted by the defendant's guilty plea, undisputed facts in

the PSI or evidence presented at the sentencing hearing.  United States v. Polar,

369 F.3d 1248, 1255 (11th Cir. 2004).  A sentencing court's fact findings "cannot

be based on speculation."  United States v. Newman, 614 F.3d 1232, 1238 (11th

Cir. 2010).  A fact finding is clearly erroneous when it leaves this Court with a

"definite and firm conviction that a mistake has been committed." United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted). However, a sentencing court's choice between two permissible views of the evidence cannot be clear error. United States v. Monzo, 852 F.3d 1343, 1345 (11th Cir. 2017); United States v. Ndiaye, 434 F.3d 1270, 1305 (11th Cir. 2006).

Here, the district court's fact findings, which supported both the upward departure and the alternative upward variance, were not clearly erroneous. There is ample support in the record for the district court's findings that Davis helped his mother cover up the murder by helping clean up the blood and by stealing his father's identity and that Davis also helped his mother carry out the purpose of the murder by taking his father's pension and Social Security benefits. It is undisputed that Davis admitted to Detective Cogburn at his fourth interview that he knew his mother was going to murder his father and that, after she committed the murder, he painted over the bloodstains on the wall. The district court's finding that Davis painted over the bloodstained wall to conceal the murder, rather than for "housekeeping purposes," was a reasonable view of the evidence, and therefore not clearly erroneous. Moreover, it was undisputed that Davis had stolen his father's identity, which further ensured that the murder would remain hidden. Finally, during his fourth interview, Davis also admitted that his mother murdered his father so that she could get rid of him but keep his benefits, which helped pay their

12

bills.  Accordingly, there is no merit to defendant Davis's claim that the district court's chosen sentence is based on clearly erroneous facts.

As for the upward departure, a sentencing court may depart upwards from the applicable guidelines range under U.S.S.G. § 5K2.0 if there exists aggravating circumstances not adequately taken into consideration by the Sentencing Commission in formulating the guidelines, or, in an "exceptional case," if an aggravating circumstance is not specifically identified in the guidelines, but is "relevant to determining the appropriate sentence."  U.S.S.G. § 5K2.0(a)(2)(A)-(B).  We ordinarily review an upward departure from the applicable guidelines range for an abuse of discretion.  United States v. Flanders, 752 F.3d 1317, 1341 (11th Cir. 2014).  If, however, the resolution of a guidelines issue does not matter to the district court's ultimate sentencing decision, then we need not review the guidelines issue on appeal so long as the sentence imposed remains substantively reasonable.  United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006) (explaining that when the district court states on the record that it would impose the same sentence using its authority under § 3553(a), we do not review the guidelines issue except to determine whether the sentence is still reasonable even if the guidelines issue had been decided in the defendant's favor).

Here, the district court made clear that, even if an upward departure under § 5K2.0(a)(2) was not warranted in Davis's case, it would alternatively impose the

13

96-month sentence as an upward variance based on consideration of the § 3553(a) sentencing factors. Davis does not dispute that, pre-departure, his advisory guidelines range for Counts 1 through 9, 22, and 23 was 18 to 24 months, and his guidelines sentence for Counts 10 through 21 was a mandatory consecutive 24-month sentence, or, in other words, a total range of 42 to 48 months. For the reasons discussed below, the district court's alternative ruling imposing a 48-month upward variance from the high end of that range, for a total sentence of 96 months, was substantively reasonable. Therefore, any error in applying an upward departure under § 5K2.0(a)(2) was harmless and does not require a remand for resentencing. Further, Davis has not otherwise shown that his sentence is procedurally unreasonable.

## B.    Substantive Reasonableness

After reviewing a sentence for procedural reasonableness, this Court turns to the issue of substantive reasonableness. See United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). In choosing a sentence, the district court must consider the 18 U.S.C. § 3553(a) factors, but is not required to address each factor explicitly. United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).[1] The

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the

14

weight to be given any specific § 3553(a) factor is committed to the sound discretion of the district court. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).

When the district court imposes a sentence outside the advisory guidelines range, "it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007)). We must give due deference to the district court's determination that the § 3553(a) factors, on the whole, justify the extent of the variance, and we do not require extraordinary circumstances to justify the extent of the variance or presume that such a sentence is unreasonable. Gall, 552 U.S. at 47, 51, 128 S. Ct. at 594-95, 597; see also United States v. Rosales-Bruno, 789 F.3d 1249, 1256-57 (11th Cir. 2105).

In reviewing a sentence for substantive reasonableness, this Court considers the totality of the circumstances and will remand for resentencing only when "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United

---

Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

States v. Irey, 612 F.3d 1160, 1189-1190 (11th Cir. 2010) (en banc) (quotation marks omitted).  The party challenging the sentence bears the burden to show it is substantively unreasonable.  Tome, 611 F.3d at 1378.

Here, defendant Davis has not shown that his 96-month sentence is substantively unreasonable in light of the record and the § 3553(a) factors.  Contrary to Davis's claim, his is not a "run-of-the-mill" stolen benefits case.  Davis was not merely aware that his father had died, but, by his own admission, knew his mother was going to murder his father and was present when his mother committed the murder.  Davis further admitted that one of his mother's motives for the murder was to obtain his father's benefits, and, after the murder, Davis stole his father's identity in order to get those benefits.  In addition, even if Davis had not painted over the bloodstains on the wall of the trailer, his subsequent theft of his father's identity and benefits contributed to the concealment of his mother's violent crime.

Given the circumstances surrounding defendant Davis's offenses, we cannot say the district court abused its discretion when it determined that a 48-month upward variance was warranted.  We note also that Davis's total 96-month sentence was less than half the statutory maximum for a single count of wire fraud, another indication of its reasonableness.  See United States v. Stanley, 739 F.3d 633, 656 (11th Cir. 2014) ("A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence.").

16

**C.    Sentences on Counts 22 and 23**

As the government concedes, the district court's 72-month sentences on Counts 22 and 23 exceed the five-year (60 month) statutory maximum sentence for a violation of 18 U.S.C. § 1001(a)(2).  A general sentence, which does not exceed the maximum possible sentence for all counts but does exceed the maximum allowable sentence on one of the counts, is per se illegal and requires remand.  See United States v. Moriarty, 429 F.3d 1012, 1025 (11th Cir. 2005); Jones v. United States, 224 F.3d 1251, 1259 (11th Cir. 2000).  Accordingly, while we affirm the Davis's total sentence of 96-months, we vacate Davis's 72-month sentences on Counts 22 and 23 and remand to the district court for the limited purpose of correcting the judgment to 60 months' imprisonment as to those two counts.

**AFFIRMED IN PART, VACATED IN PART AND REMANDED.**

17